Filed June 1, 1886.

---

No. 12,559.

## JAQUA v. THE WITHAM AND ANDERSON COMPANY.

PLEADING.—*Complaint.*—*Averments as to Abbreviations.*—In declaring upon a written instrument containing abbreviated and incomplete terms, extrinsic averments may be used in the complaint to make that intelligible which is of itself unintelligible.

EVIDENCE.—*Abbreviations, etc., Explanation of.*—*Intention.*—Evidence tending to explain the sense in which the parties were in the habit of using particular abbreviations and characters, and to show their conventional meaning, is admissible, but not to show the intention of a party in making use of them.

From the Jay Circuit Court.

*D. T. Taylor, J. M. Smith* and *T. Bailey,* for appellant.

*T. Shockney, J. W. Headington* and *J. J. M. LaFollette,* for appellee.

NIBLACK, J.—Complaint by the Witham and Anderson Company, a corporation organized and existing under the laws of this State, against Alonzo L. Jaqua, in two paragraphs.

The first paragraph was for lumber, doors and brackets. sold and delivered to Jaqua, the defendant, at his alleged instance and request.

The second paragraph charged that, on or about the 16th day of October, 1883, the defendant addressed an inquiry to the plaintiff in figures, words, signs and abbreviations, as follows:

"PORTLAND, IND.

"Gentlemen: Could you furnish the following: 40 brack. 3x5, 3 mem.; 36 brack. 12x18, 3 mem.? At what price and how soon?        Respectfully,        A. L. JAQUA.

"Oct. 16th, 1883."

That by the usages and customs of the business of manufacturing, buying and selling dressed lumber and brackets, the abbreviation "brack." is held and intended to mean and does mean "bracket;" that the character "x" is a substitute for and means "by;" that the abbreviation "mem." stands for the word "member;" that the word "ply," signifies "thickness;" that "brackets" are always quoted and sold as a single bracket, and not by the lot, hundred or dozen, unless so designated; that in response to the above inquiry, the plaintiff answered the defendant in a communication thus:

"UNION CITY, IND., Oct. 18th, 1883.

"Sir: Your brackets, 3x5, will cost you 2.50, and your 12x18 will cost you 33⅓. Can make at once.

"Respectfully,        THE WITHAM & ANDERSON CO."

That 2.50, when following the number and size of brackets, means $2.50 each; that 33⅓, when following in like manner, means 33⅓ cents each bracket; that in reply to the communication lastly above set out the defendant, by the name and style of A. L. Jaqua, made the following order:

"PORTLAND, IND.

"Gentlemen: Send me at once 42 brackets, 3x5, 3 ply; 52 brackets, 12x16, 3 ply. Send *via* Redkey to Portland. How soon can you ship? Respectfully, A. L. JAQUA."

That by the usages and customs of the dressed lumber

trade, the "3x5" contained in the foregoing order, meant either three feet by five feet, or three inches by five inches, and that the "12x16" meant either twelve feet by sixteen feet, or twelve inches by sixteen inches; but that when "3x5" brackets were followed by "2.50," it meant three feet by five feet brackets at $2.50 each, and that when the "12x16" brackets were followed by "33⅓," it meant twelve inch by sixteen inch brackets at 33⅓ cents each; that, in compliance with the order above set out, the plaintiff, in November, 1883, shipped to the defendant forty-two brackets, three feet by five feet, three ply, at $2.50 each, and fifty-two brackets, twelve inches by sixteen inches, three ply, at 33⅓ cents each, all said brackets being of the aggregate value of $121.33; that the defendant had failed and refused, and still fails and refuses, to pay for such brackets. Wherefore judgment was demanded.

Demurrers to both paragraphs of the complaint were severally overruled, after which, and issue joined, there was a trial by the court, and a finding and judgment for the plaintiff.

It is first sought to be maintained that the circuit court erred in overruling the demurrer to the second paragraph of the complaint, upon the ground that the inquiry, answer and reply set out in that paragraph were too imperfect, indefinite and uncertain to form a contract between the parties, or to serve as memorandums in writing to bind either one of the parties, and that their defects in that respect were of a character which could not be, and hence were not, cured by the extrinsic averments of the paragraph.

It was held in the case of *Barton* v. *Anderson*, 104 Ind. 578, that where a writing is in short and incomplete terms, parol evidence is admissible to explain that which is *per se* unintelligible, such explanation not being inconsistent with the written terms. The rule of evidence thus stated is well supported by authority, and is applicable to all abbreviations and characters used by parties in the course of their business, and which have a conventional meaning, independent of any

general usage or understanding. 1 Greenl. Ev., section 282; Whart. Ev., section 1003; Best Ev., page 232.

This rule is still more plainly applicable to abbreviations and characters which have meanings attached to them by common consent or general usage. Best Ev., page 262.

As parol evidence may be introduced to explain abbreviated and incomplete terms in a written instrument, it necessarily results that, in counting or declaring upon a writing containing such terms, extrinsic averments may be used to make that intelligible which is *per se* unintelligible. Consequently the demurrer to the second paragraph of the complaint was correctly overruled.

At the trial some correspondence between the parties, not relating to the particular articles of property in controversy, but containing similar abbreviations and characters to those used in the communications set out as above in the second paragraph of the complaint, was read in evidence to show the meaning which the defendant had previously placed upon the same abbreviations and characters, and that is also complained of as having been an erroneous proceeding. When, however, the construction which ought to be placed upon a transaction between parties is involved in some doubt or uncertainty, evidence tending to show the construction which the parties have themselves given to similar transactions is admissible. So, also, is evidence tending to explain the sense in which the parties were in the habit of using particular words and phrases. 1 Greenl. Ev., section 283; Whart. Ev., sections 954 and 962; *Reissner* v. *Oxley*, 80 Ind. 580. In that view the correspondence complained of was properly admitted in evidence.

The defendant offered himself as a witness to prove what his *intention* was in the use of the abbreviations and characters contained in his order for brackets set out in the second paragraph of the complaint, and which had been previously read in evidence, but the court refused to permit the proposed proof to be made, allowing the defendant only to testify as

to his understanding as to the conventional meaning of the abbreviations and characters in question.

There was no error in excluding the proffered evidence as stated. The question was, not what may have been the *intention* of the defendant in the premises, but what was the real meaning of the terms employed by him, when considered in the light of the circumstances under which they were so employed.

Other questions were reserved upon the admissibility of certain items of evidence, but they are all practically disposed of, adversely to the defendant below, by our rulings upon the sufficiency of the second paragraph of the complaint.

The judgment is affirmed, with costs.

